**[J-93-2016] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| PENNSYLVANIA STATE POLICE, | : | No. 25 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court dated July 7, |
| | : | 2015 at No. 1146 CD 2014 affirming in |
| v. | : | part, reversing in part and remanding in |
| | : | part the Final Determination of the |
| | : | Office of Open Records at No. AP 2014- |
| MICHELLE GROVE, | : | 0828 dated June 17, 2014. |
| | : | |
| Appellee | : | ARGUED:  September 14, 2016 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                                 **DECIDED:  June 20, 2017**

I join the opinion of the learned Majority.

I write separately to question this Court's continued adherence to the proposition that, for purposes of the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"),[1] "one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy."  *Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998). This rule reflects an erroneous conflation of statutory and constitutional standards, and unduly restricts the scope of the interest that the Wiretap Act is intended to protect.

An "oral communication," the unauthorized interception of which is prohibited by the Wiretap Act, is defined, in relevant part, as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation."  18 Pa.C.S. § 5702.

---

[1]      18 Pa.C.S. §§ 5701-82.

While the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect one's reasonable expectation of privacy in a communication, the Wiretap Act, by its plain terms, protects a distinct interest—the expectation that one's utterances will not be surreptitiously intercepted. The conflation of these concepts, which I believe to be unwarranted, derived from the statute's requirement that the expectation of non-interception be justifiable under the circumstances. *See Commonwealth v. Henlen*, 564 A.2d 905, 907 (Pa. 1989).

Before the statutory definition of an "oral communication" collapsed into the constitutional analysis of the reasonable expectation of privacy, this Court decided *Commonwealth v. Blystone*, 549 A.2d 81 (Pa. 1988). In that case, we confronted a constitutional challenge to the Wiretap Act stemming from the recording of a murder suspect's conversation with a police informant, the latter having agreed to wear a "wire," which allowed police investigators to monitor and record the conversation. *Id.* at 85-86. Although the interception of that conversation ostensibly was authorized by the Wiretap Act, the defendant sought suppression of the recording, alleging that it was obtained in violation of his constitutional right to be free from unreasonable searches and seizures. Relying upon the decisions of the Supreme Court of the United States in *United States v. Caceres*, 440 U.S. 741 (1979), and *United States v. White*, 401 U.S. 745 (1971) (plurality), for the proposition that electronic surveillance conducted pursuant to the consent of one party to a communication does not violate the Fourth Amendment, the *Blystone* Court reasoned:

> Basically, the Supreme Court has recognized the simple fact that a thing remains secret until it is told to other ears, after which one cannot command its keeping. What was private is now on other lips and can no longer belong to the teller. What one choses [*sic*] to do with another's secrets may differ from the expectation of the teller, but it is no longer his secret. How, when, and to whom the confidant discloses the confidence is

his choosing.  He may whisper it, write it, or in modern times immediately broadcast it as he hears it.

*Blystone*, 549 A.2d at 87-88.  Accordingly, this Court found "no constitutional defect in the statute," *id.* at 88, and concluded that the recording of the defendant's conversation did not violate his constitutional rights because he ceased to possess a reasonable expectation of privacy in his words.

*Blystone* plainly involved a constitutional analysis.  The statutory definition of an "oral communication" was not at issue.  It was in *Henlen* that this Court began to blur that statutory definition, allowing it to be subsumed into the constitution's minimum protection of one's privacy interest.  In *Henlen*, a defendant was charged with a Wiretap Act violation when he secretly recorded an interview with a Pennsylvania State Police trooper, and later provided the recording to that agency's Internal Affairs Division, alleging that the trooper had harassed him.  *Henlen*, 564 A.2d at 905.  Before this Court, the defendant argued that, by recording the interview, he did not intercept any oral communication within the meaning of the Wiretap Act because the trooper possessed no reasonable expectation of privacy in his words during the interview.  This Court agreed.  However, in so doing, we extended *Blystone* beyond its constitutional terms, applying its reasoning to the statutory definition of an oral communication.  *Id.* at 907.  Although we recognized that the statute protects a speaker's expectation of non-interception, we noted that the statute is "clear that such an expectation must be justifiable under the *circumstances*."  *Id.* (emphasis in original).  To that end, we reasoned that "the broad principles of *Blystone* relating to the expectation of privacy in a conversation are applicable in determining whether circumstances support a conversant's expectation that his or her conversation would not be intercepted."  *Id.*

For a time, it was not settled that the statutory expectation of non-interception was co-extensive with the constitutional expectation of privacy in every instance.  The

Superior Court addressed that question in *Commonwealth v. McIvor*, 670 A.2d 697 (Pa. Super. 1996). Because this Court in *Henlen* stated that the principles relating to the expectation of privacy in a conversation are "applicable" in evaluating the expectation of non-interception under the Wiretap Act, the court in *McIvor* concluded that those principles are merely a factor in the determination. *Id.* at 700. "Put another way," the Superior Court reasoned, "what the [*Henlen* Court] actually said was that we must determine whether the parties had an expectation of *non-interception*, but that in making this determination, we may employ the same principles used to determine whether there is an expectation of privacy . . . ." *Id.* (emphasis in original). The Superior Court observed that myriad situations could arise in which an individual possesses one expectation but not the other:

> For instance, if one is being examined by his or her physician and knows from past experience that the doctor often carries a small tape recorder in a pocket to record patient interviews, one's expectation of non-interception is nearly non-existent, but the expectation of privacy is still extremely high. On the other hand, if one is speaking with the town gossip at a public swimming pool under circumstances [e]nsuring that the gossip is not wearing a body wire, one's expectation of non-interception is very high, but the expectation of privacy is very low. Thus, an expectation of privacy does not always carry a concomitant expectation of non-interception, and vice versa.

*Id.*

If *Henlen* left any lingering doubts about this Court's views regarding the relationship between the statutory and constitutional expectations, our decision in *Agnew* squarely resolved them. In *Agnew*, this Court considered whether a police chief violated the Wiretap Act when he used a telephone intercom system to intercept conversations between police officers taking place in a common area of the police station. *Agnew*, 717 A.2d at 521. The dispositive question was whether the subject conversations were oral communications within the meaning of the Wiretap Act, and if

the correct standard for making that determination was "whether the speaker has a justifiable expectation that his words will not be seized and carried away through the use of a device, as opposed to whether or not the speaker had a justifiable expectation of privacy." *Id.* at 522. The *Agnew* Court recognized that, in evaluating whether an utterance constitutes an "oral communication" under the Wiretap Act, "the proper inquiries are whether the speaker had a specific expectation that the contents of the discussion would not be intercepted, and whether that expectation was justifiable under the existing circumstances." *Id.* at 523. However, without qualification, we further held:

> In determining whether the expectation of non-interception was justified under the circumstances of a particular case, it is necessary for a reviewing court to examine the expectation in accordance with the principles surrounding the right to privacy, *for one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy*.

*Id.* (emphasis added). Applying this holding to the facts of *Agnew*, we determined that, because the conversations at issue could be overheard by other persons, the police officer challenging the interception possessed no reasonable expectation of privacy in his utterances. As such, we concluded that he *necessarily* lacked a justifiable expectation of non-interception, such that the conversations at issue did not involve "oral communications" within the meaning of the Wiretap Act. *Id.* at 524.

It was this "sweeping conclusion" that prompted Justice Nigro's concurring opinion in *Agnew*. *Id.* (Nigro, J., concurring). Justice Nigro opined that "the expectation of non-interception and the expectation of privacy involve two distinct inquiries[,]" and that "a speaker, under certain circumstances, may possess a reasonable expectation of non-interception even in the absence of a reasonable expectation of privacy." *Id.* at 525. Endorsing the Superior Court's reasoning in *McIvor* and the hypothetical circumstances that it envisioned, Justice Nigro distanced himself from the *Agnew*

majority's conclusion that the "lack of a reasonable expectation of privacy automatically ends the inquiry of whether a reasonable expectation of non-interception may have existed." *Id.*

In my view, Justice Nigro's concurring opinion in *Agnew* reflects the more reasoned approach to interpreting the statutory definition of an "oral communication." To conclude, as this Court has, that the mere possibility of being overheard by a third party effectively places an individual on notice that his or her words are subject to interception and recordation defies a common-sense reading of the statute and unduly restricts the scope of the interest that the Wiretap Act was meant to protect. A person conversing with a friend at a restaurant, bar, or coffee shop may not be able to expect that such a conversation will remain private when another patron of the establishment is sitting a few tables away, easily within earshot. However, absent some indication to the contrary, I find it perfectly reasonable for the speaker to believe that the potential eavesdropper is not secretly recording the conversation with a hidden electronic device. However, *Agnew*'s holding not only leaves this conversation unprotected from interception by the nearby patron, but the presence of that patron, and the corresponding loss of the speaker's expectation of privacy, also ensures that no violation of the Wiretap Act occurs when an individual in a building across the street intercepts the conversation with a high-powered directional microphone. Even more curiously, the speaker might regain her expectation of privacy when the third-party patron exits the room to use the restroom, leaving no one nearby to overhear her conversation. At that point, the snoop across the street is intercepting a protected "oral communication" in violation of the Wiretap Act. However, when the third-party patron returns, the speaker's expectation of privacy is again lost, so that same interception ceases to be a violation of the Wiretap Act.

The far more sensible construction of a communication "uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation," 18 Pa.C.S. § 5702, involves consideration of precisely what the statute says, and nothing more. An utterance is protected if the speaker can expect that the utterance is not being intercepted, and that expectation is justified if the circumstances do not suggest otherwise. I have no trouble concluding that this expectation is justifiable in the vast majority of instances in which people speak, and becomes unjustifiable only in the presence of some indicia that one's utterances are being intercepted. It never was necessary or warranted to engraft the constitutional standard for ascertaining a reasonable expectation of privacy onto this definition, and doing so both contravened the statute's plain language and limited the clear scope of the elevated protection that it sought to provide, effectively rewriting the statute to conform to a lower standard that the legislature did not choose to employ.

That said, there is no question that *Agnew* is binding precedent, and the Commonwealth Court in the instant case failed to apply its reasoning, or even to cite it. Although the Commonwealth Court's focus upon whether the individuals who were recorded "had notice of the recording or any expectation that the interview was not subject to recording," *Pennsylvania State Police v. Grove*, 119 A.3d 1102, 1111 (Pa. Cmwlth. 2015), better aligns with my view of the statute's requirements, it is incorrect under *Agnew*. Instead, the Commonwealth Court was required to assess whether any reasonable expectation of privacy existed in the utterances captured by the recordings at issue. As today's Majority concludes, such a reasonable expectation was lacking. *See* Maj. Op. at 41-42.

In an appropriate case, I believe that this Court should reevaluate *Agnew*'s holding. But today, *Agnew* controls the analysis, and I agree with the Majority that the

Commonwealth Court erred in failing to apply the correct standard as set forth in that case.  As such, and in all other respects, I join the opinion of the learned Majority.

Justice Todd joins this concurring opinion.